IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RYAN PERRY, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>   v.<br><br>CABLE NEWS NETWORK, INC., a Delaware corporation, and CNN INTERACTIVE GROUP, INC., a Delaware corporation,<br><br>   *Defendants*. | Case No. 1:14-cv-1194 |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

  Plaintiff Ryan Perry ("Perry") brings this Class Action Complaint ("Complaint") against Defendants Cable News Network, Inc. and CNN Interactive Group, Inc. (collectively referred to in the singular as "CNN") to put an end to their unlawful practice of disclosing their users' sensitive information, and to obtain redress for such conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

**NATURE OF THE ACTION**

  1.  Defendant Cable News Network, Inc. is one of the largest producers of television news programming in the world. Perhaps best known for its eponymously named television channel, the Cable News Network also offers content to consumers via other media, including on mobile devices (such as the iPhone) through its proprietary mobile software application (the "CNN App"). Defendant CNN Interactive Group, Inc. is Cable News Network's subsidiary responsible for the development and distribution of the CNN App.

  2.  Unbeknownst to its users, each time users read news stories or view video clips

using the CNN App on their iPhones, CNN discloses their personally identifiable information—including a record of every news story, video clip, and headline viewed by each user (collectively, "Personally Identifiable Information" or "PII")—to unrelated third parties. In addition to demonstrating a brazen disregard for its users' privacy rights, CNN's actions also violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which prohibits companies from disclosing their customers' video viewing records to third parties without express written consent.

3. CNN's violation of the VPPA is particularly flagrant here, as it programmed the CNN App to submit users' PII to a third party web data analytics company. The business models of such "big data" companies center on the collection of disparate pieces of uniquely identifying information and online behavioral data about individual consumers, which they then compile to form comprehensive profiles about a person's entire digital life. These profiles can then be used for targeted advertising, sold as a commodity to other data brokers, or both.

4. In an era when the collection and monetization of consumer data proliferates on an unprecedented scale, it's important that companies are held accountable for the exploitation of their users' sensitive information. CNN chose to disregard Plaintiff's and thousands of other users' statutorily protected privacy rights by releasing their sensitive data into the marketplace. Accordingly, Plaintiff brings this Complaint against CNN for its intentional and unlawful disclosure of his PII in violation of the VPPA.

**PARTIES**

5. Plaintiff Ryan Perry is a natural person and citizen of the State of Illinois.

6. Defendant Cable News Network, Inc. is a corporation existing under the laws of the State of Delaware, with its headquarters and principal place of business located 1 CNN

Center, Atlanta, Georgia 30303. Defendant Cable News Network, Inc. conducts business throughout this County, the State of Illinois, and the United States.

7.  Defendant CNN Interactive Group, Inc., is a corporation incorporated in and existing under the laws of the State of Delaware, with its headquarters and principal place of business located 1 CNN Center, Atlanta, Georgia 30303. Defendant CNN Interactive Group, Inc. conducts business throughout this District, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

8.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the action arises under the VPPA. This Court has personal jurisdiction over Defendants because CNN conducts significant business transactions and solicits consumers in this District, and because the improper conduct alleged in the Complaint occurred in, was directed from, and/or emanated from this District.

9.  Venue is proper in this District under 28 U.S.C. § 1391(a) because his injury arose in this District. Venue is additionally proper because Defendants transact significant business in this District, including entering into consumer transactions, and because Plaintiff Ryan Perry resides in this District.

## FACTUAL BACKGROUND

I.  **CNN Programmed the CNN App to Transmit Its Users' PII and Video Viewing Activity to a Third Party Analytics Company Without Their Consent.**

10. The CNN App is a mobile software application that allows consumers to access the Cable News Network's news and entertainment programming on their iPhones to "[g]et breaking news alerts and follow stories as they develop," and "[w]atch video clips and coverage

3

of live events as they unfold."[1]

11. To install the application on an iPhone, users must visit the Apple iTunes Store, the online digital media platform operated by Apple Inc. Once downloaded and installed, and upon opening the application for the first time, the CNN App prompts the user for permission to use the phone's current location and to send the user push notifications. (*See* <u>Figure 1</u>, showing the prompts displayed to users by the CNN App when first opened).



(**Figure 1.**)

12. At no time during this process, however, does CNN seek or obtain the consent of the user to share or otherwise disclose his or her PII to third parties for any purpose.

> *1.  The CNN App sends its users' video-viewing activity and PII to the data analytics company Bango.*

13. The CNN App is organized into certain sections that are accessible through the

---

[1]   CNN App for iPhone, https://itunes.apple.com/us/app/cnn-app-for-iphone/id331786748?mt=8 (last accessed January 20, 2014).

4

software's main user interface. (*See* Figure 2, showing the CNN App's user interface). Users may browse around these sections to read news stories and view video clips. (*See id.*)

 

(**Figure 2.**)

14. Unbeknownst to its users, however, each time they view a news story, video clip, or headline, the CNN App compiles a record of such activities. Then, each time the CNN App is closed, it sends the complete record to an unrelated third-party data analytics company called Bango[2] along with the unique media access control address ("MAC address")[3] associated with the user's mobile device.

---

[2] Bango is a data analytics company based in the United Kingdom. The company claims to specialize in tracking individual user behaviors across the Internet and mobile applications. Bango boasts that its technology "reveals customer behavior, engagement and loyalty across and between all your websites and apps." *See* Bango Analytics, http://bango.com/mobile-analytics/ (last accessed January 20, 2014). To accomplish this, Bango relies on uniquely identifying information about consumers to track their behavior.

[3] A MAC address is a unique numeric string assigned to network hardware in the iPhone. Tellingly, and as explained in more detail in Section II below, Apple recently prohibited apps from transmitting MAC addresses to third parties due to privacy concerns.

**II.     Data Analytics Companies Rely on Unique Identifiers Associated with Mobile Devices to Create Digital Dossiers On Consumers and Their Online Behaviors.**

15.     Today's average consumer uses more than one device to access the Internet to do things like view digital content or make online purchases. This creates challenges for online advertisers and analytics companies. Namely, to gain a broad understanding of a given consumer's behavior across all of the devices that he or she uses, these companies have to find ways to "link" his or her digital personas. The primary solution has been to use certain unique identifiers to connect the dots.

16.     The graphic from Bango's website, shown in Figure 3 below, provides a simplistic illustration of how different devices are all linked together as belonging to an individual:



(**Figure 3.**)

17.     As depicted in Figure 3, the key to successfully tracking individuals' online behavior is to precisely identify the users and link their activities across websites and devices. To do this, Bango relies on, in relevant part, "[o]perator and device manufacturer supplied

identity."[4]

18.  An example of an "[o]perator and device manufacturer supplied identity" in the mobile-computing context is the MAC addresses. That's because MAC addresses are "persistent identifiers," meaning they are unique to a specific device. Once a MAC address is matched with an individual's identity, it's exceedingly difficult for that person to avoid being tracked via their mobile device—making it among the most stable and reliable identifiers for a given individual.

> **1.  *Bango and other analytics companies maintain massive digital dossiers on consumers.***

19.  Once a consumer's identity is matched with a device's MAC address, a wealth of extremely precise information can be gleaned about the individual. For instance, mobile applications that transmit a MAC address along with the user's activity within the software provide an intimate look into the user's habits, including revealing information such as the games played, articles read, videos viewed, and even detailed sequences of events in which the user conducted these actions.

20.  An excerpt from one of Bango's marketing materials, shown in <u>Figure 4</u> on the following page, accurately portrays the frightening array of information that feeds into a consumer's digital dossier using data transmitted from sources such as mobile applications:

*          *          *

---

[4]  Bango Analytics, http://bango.com/mobile-analytics/ (last accessed January 20, 2014).



(**Figure 4.**)

21.     **Figure 4** provides insight into the depth of information stored by analytics companies like Bango. Of particular note is that "Applications," shown in top right tab—such as the CNN App—assist in the "data enrichment" of a consumer's profile, which includes information like the person's location, phone number, email, purchase history, app activity history, and payment details.

> **2.    *The public, Congress, and private companies respond to growing privacy concerns about mobile apps transmitting sensitive data to third parties.***

22.     Concerns over the privacy risks associated with collecting and transmitting PII from mobile applications to third parties are no longer just academic musing. Congress is taking notice, and has held subcommittee meetings—including one focusing on "Consumer Privacy and Protection in the Mobile Marketplace"—to address the issue. During that hearing, Senator John Rockefeller noted that, "these third parties use [consumer data] to target advertising on individuals . . . It is very good business, but it is very cynical. It is an abuse of that power,

passing on people's profiles."[5]

23. Companies are starting to change their practices in response to these privacy concerns as well. Tellingly, in the release of Apple's most recent operating system, iOS 7, it discontinued mobile applications' ability to transmit MAC addresses to third parties for tracking purposes.[6]

24. And perhaps most strikingly, classified documents from the National Security Agency (NSA) reported on by the New York Times show that the government agency targets this very information (uniquely identifying data sent from mobile apps) to create its own detailed profiles on individuals.[7]

25. Despite the controversy surrounding these methods of harvesting and commodifying sensitive consumer data, CNN chose to disclose nearly every digital movement of its CNN App users—including MAC addresses—to a third party analytics company.

### III. The VPPA's Importance in the Digital Age.

26. When the VPPA was introduced, the late Senator Paul Simon noted that, "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes." S.Rep. No. 100-599 at 7 – 8 (1988). Senator Patrick Leahy, one of the

---

[5] S. Hrg. 112-289, Consumer Privacy and Protection in the Mobile Marketplace, http://www.gpo.gov/fdsys/pkg/CHRG-112shrg73133/html/CHRG-112shrg73133.htm (last accessed January 20, 2014).

[6] iOS 7 Eliminates MAC Address As Tracking Option, Signaling Final Push Towards Apple's Own Ad Identifier Technology, http://techcrunch.com/2013/06/14/ios-7-eliminates-mac-address-as-tracking-option-signaling-final-push-towards-apples-own-ad-identifier-technology/ (last accessed January 20, 2014).

[7] Spy Agencies Scour Phone Apps for Personal Data, http://www.nytimes.com/2014/01/28/world/spy-agencies-scour-phone-apps-for-personal-data.html#document/p10/a142016 (January 27, 2014).

original drafters of the VPPA, also remarked that, "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." *Id.* at 8.

27. While these statements rang true in 1988 when the act was passed, the need for legislation like the VPPA in the modern computing era is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized this point, saying that, "[w]hile it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[8]

28. Likewise, Senator Al Franken summed up the importance of the VPPA in today's world as follows: "[i]f someone wants to share what they watch, I want them to be able to do so . . . But I want to make sure that consumers have the right to easily control who finds out what they watch—and who doesn't. The Video Privacy Protection Act guarantees them that right."[9]

### IV. Plaintiff Perry's Experience with the CNN App.

29. Starting in early 2013, Plaintiff Perry began using the CNN App on his iPhone mobile device to read news stories and watch video clips.

30. At all times relevant, Perry has never consented, agreed, or otherwise permitted CNN to disclose his PII to third party analytics companies.

---

[8] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, http://www.judiciary.senate.gov/hearings/hearing.cfm?id=f14e6e2889a80b6b53be6d4e412d460f (last accessed January 22, 2014.)

[9] *Id.*

31. Likewise, Perry has never been given the opportunity to prohibit or prevent the disclosure of his PII to third parties.

32. Nevertheless, each time after Perry read news stories and viewed video clips using the CNN App, CNN disclosed his PII to third-party analytics company Bango.

## CLASS ALLEGATIONS

33. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a class (the "Class") of similarly situated individuals, defined as follows:

> All persons in the United States who used the CNN App on their iPhone and who had their Personally Identifiable Information disclosed to Bango.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

34. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through Defendants' records.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other putative Class members, and those questions predominate over any questions that may affect individual members of the Class. Common

11

questions for the Class include but are not limited to the following:

      a)      whether CNN is a "video tape service provider" as defined by the VPPA;

      b)      whether CNN obtained written consent before disclosing Plaintiff's and the Class's PII to Bango;

      c)      whether CNN's disclosure of Plaintiff's and the Class's PII to Bango violated Section 2710(b) of the VPPA;

      d)      whether CNN knowingly violated the VPPA; and

      e)      whether Plaintiff and the Class members are entitled to punitive damages based on the willfulness of CNN's conduct.

36.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the other Class members sustained damages arising out of Defendants' uniform wrongful conduct.

37.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

38.    **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law

applicable only to Plaintiff. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have suffered similar harm and damages as a result of Defendants' unlawful and wrongful conduct.

39. **Superiority**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

40. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Video Privacy Protection Act**
**18 U.S.C. § 2710**
**(On behalf of Plaintiff and the Class)**

41.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42.     CNN is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery or prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), because it provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via its CNN App.

43.     Plaintiff is a "consumer" as defined by the VPPA because he downloaded and watched videos using the CNN App. 18 U.S.C. § 2710(a)(1). Under the VPPA, this means that he was a "subscriber" of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

44.     While the CNN App was installed on his iPhone, Plaintiff viewed numerous video clips using the software. On information and belief, during these occasions and on closing the CNN App, the software sent Plaintiff's PII—including his iPhone's MAC address and records of the content that he viewed (including video records)—to the third party analytics company Bango.

45.      The CNN App's programmed and systematic disclosure of Plaintiff's PII to Bango constitute "knowing[] disclosures" of Plaintiff's "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

46.     Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The definition's usage of

14

the word "includes" means that a more expansive reading of the term was expressly contemplated.

47. The National Institute of Standards and Technology ("NIST") defines "personally identifiable information" as "any information that can be used to distinguish or trace an individual's identity."[10] As described in detail in Section II above, Plaintiff's PII disclosed to Bango from the CNN App can be used to distinguish or trace his identity.

48. At no time did Plaintiff ever provide CNN with any form of consent—either written other otherwise—to disclose his PII to third parties.

49. Nor were CNN's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, the CNN App's disclosures to Bango (an unrelated analytics company) were not necessary for "debt collection activities, order fulfillment, request processing, [or] the transfer of ownership." 18 U.S.C. § 2710(a)(2).

50. As a result of CNN's unlawful disclosures, Plaintiff and the Class have had their statutorily defined right to privacy violated. Plaintiff seeks an injunction to prohibit CNN from releasing his and the Class's PII in the future, as well as the maximum statutory and punitive damages available under the VPPA. 18 U.S.C. § 2710(c).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Ryan Perry on behalf of himself and the Class, respectfully requests that this Court enter an order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Ryan Perry as class representative, and appointing his counsel as Class

---

[10] NIST Guide to Protecting the Confidentiality of Personally Identifiable Information (PII), http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdf (last accessed January 20, 2014).

15

Counsel;

      B.      Declaring that Defendants' actions, as set out above, violate the VPPA, 18 U.S.C. § 2710;

      C.      Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

      D.      Awarding damages, including statutory damages of $2,500 per violation, and punitive damages, where applicable, in an amount to be determined at trial pursuant to the VPPA, 18 U.S.C. § 2710(c);

      E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees pursuant to 18 U.S.C. § 2710(c)(2)(c);

      F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

      G.      Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues so triable.

                \*                \*                \*

                                        Respectfully submitted,

                                        **RYAN PERRY**, individually and on behalf of all others similarly situated,

Dated: February 18, 2014              By: s/ Benjamin H. Richman
                                           One of Plaintiff's Attorneys

                                        Jay Edelson
                                        jedelson@edelson.com
                                        Rafey S. Balabanian
                                        rbalabanian@edelson.com
                                        Benjamin H. Richman
                                        brichman@edelson.com
                                        J. Dominick Larry
                                        nlarry@edelson.com
                                        Courtney C. Booth
                                        cbooth@edelson.com
                                        EDELSON PC
                                        350 North LaSalle Street, Suite 1300
                                        Chicago, Illinois 60654
                                        Tel: 312.589.6370
                                        Fax: 312.589.6378

                                        *Counsel for Plaintiff Ryan Perry and the Putative Class*