FIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN PERRY, individually and on behalf of all others similarly situated,<br><br>                        *Plaintiff*,<br><br>    v.<br><br>CABLE NEWS NETWORK, INC., a Delaware corporation, and CNN INTERACTIVE GROUP, INC., a Delaware corporation,<br><br>                        *Defendants*. | Case No. 1:14-cv-1194<br><br>Assigned Judge:<br>Robert W. Gettleman<br><br>Designated Magistrate Judge:<br>Sheila M. Finnegan |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CNN'S MOTION TO TRANSFER OR IN THE ALTERNATIVE DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Ryan Perry ("Plaintiff") alleges that CNN violated the Video Privacy Protection Act ("VPPA") because when a user viewed a video clip on CNN's "app," the app sent to third-party (Bango) a record of the content viewed along with the device identifier (MAC address) of the iPhone used to view that content.  This action is one of two suits alleging violations of the VPPA filed by the same plaintiffs' attorneys within one day of one another.  The other case—against Cartoon Network (which, like CNN, is a subsidiary of Turner Broadcasting System, Inc. ("TBS, Inc."))—was filed in District Court for the Northern District of Georgia, and makes allegations nearly identical to those here.  Both suits seek to stretch the applicability of the 1988 VPPA well past its breaking point.

Before litigation proceeds in this district, the Court should transfer this action pursuant to 28 U.S.C. § 1404(a) to the court presiding over the Cartoon Network case in Georgia.  The

interests of justice favor transferring the case to the Northern District of Georgia because it would conserve judicial resources and avoid the risk of inconsistent judgments. Moreover, because both Cartoon Network and CNN are subsidiaries of TBS, Inc., and headquartered in Atlanta, the Georgia court is more convenient and accessible to the primary witnesses and parties. Similarly, relevant documents other sources of proof are more accessible there.

If the Court is not inclined to transfer this action, it should dismiss it. The insurmountable hurdle for the plaintiff is that the VPPA prohibits a "video tape service provider" only from disclosing information that actually identifies *both* a particular individual and the specific videos that individual viewed. It does not apply to the disclosure of anonymous numbers or device identifiers such as the MAC address described in the complaint. Indeed, *no court* has ever found that such a number alone constitutes "personally identifiable information" under the VPPA. In fact, under the analogous Cable Act, which governs the privacy of viewing information for cable television, courts have found that such numbers are *not* personally identifiable information.

Perhaps recognizing as much, the complaint speculates that Bango could theoretically combine the identifier of a device with other unidentified information it may obtain from other unidentified sources to decipher an individual's actual identity. This kind of conclusory and speculative pleading, however, cannot survive a motion to dismiss. And even if Bango could theoretically combine a device identifier with other information to guess at the identity of an individual user, any such reverse engineering would not retroactively convert CNN's disclosure of a device identifier into "personally identifiable information" under the VPPA.

Plaintiff's complaint fails for the additional, independent reason that he has not alleged any cognizable injury and therefore lacks Article III standing. Plaintiff does not allege that Bango used information provided to it to actually identify him, which is a prerequisite for

establishing standing. Instead, the complaint merely speculates about what Bango *could* do with the information it allegedly receives from the CNN app. Put another way, plaintiff does not allege that he personally was adversely affected by CNN's conduct.

## BACKGROUND

### A.     CNN and its App

CNN Interactive Group, Inc., and Cable News Network, Inc. (together "CNN"), are Delaware corporations with their headquarters in Atlanta, Georgia. Complaint ("Compl.") ¶¶ 6-7. CNN is a subsidiary of TBS., Inc. *See* Defendants' Notification of Affiliates [D.E. 13]. TBS, Inc. is an indirect, wholly-owned, subsidiary of Time Warner Inc. *Id.*

CNN produces and distributes a variety of content, including television programing. Compl. ¶ 1. It distributes this content through several different mediums. For example, CNN offers content through its television channel bearing the same name. *Id.* It also offers content through a mobile software application, or "app" that can be downloaded to mobile devices, such as the plaintiff's iPhone. *Id.* To download the CNN app (the "App") to an iPhone, a user must visit the Apple iTunes Store, an online digital media store operated by Apple. *See Id.* ¶ 11, n. 1. According to iTunes' "Description" of the App, users of the App can get "breaking news alerts and follow stories as they develop." *Id.* ¶ 10. Users can also watch "video clips and coverage of live events as they unfold" and view their "favorite CNN shows LIVE." *Id.*

### B.     The Alleged Misconduct

Plaintiff alleges that each time an iPhone user views a video clip on the App, the App discloses certain allegedly personally identifiable information ("PII") to unrelated third parties. Compl. ¶ 2. Specifically, plaintiff alleges that unbeknownst to the App's users "each time they view [a] news story, video clip or headline" the App "compiles a record of such activities." *Id.* ¶ 14. According to plaintiff, this record is sent along with the unique media access control

address ("MAC address") associated with the user's iPhone to "an unrelated third-party data analytics company called Bango." *Id.* Plaintiff describes the MAC address as "a unique numeric string assigned to network hardware in the iPhone." *Id.* at n. 3.

This is the lone allegation against CNN. Plaintiff does not allege that any identifying information other than the user's MAC address is provided to Bango. For example, plaintiff does not allege that any iPhone user's name, mailing address, or email address is transmitted to Bango. Nor does he allege that CNN had such information about its users since there is no allegation that registration is required to use the App.

According to plaintiff, Bango is a U.K-based data analytics company that specializes in "tracking individual user behavior across the Internet and mobile applications." *Id.* ¶ 14, n. 2. Plaintiff alleges that "to gain a broad understanding of a given consumer's behavior across all of the devices that he or she use" companies such as Bango "have to find ways to 'link' his or her digital personas." *Id.* at 15. And that these companies' "primary solution has been to use certain unique identifiers to connect the dots." *Id.* Plaintiff does not allege, however, that Bango (or anyone else) performed such "dot connecting" on him or any other user of the App.

Instead, plaintiff cites to various materials on Bango's website in an effort to create the specter of such identification. For example, plaintiff points to Bango's statement that its technology "reveals customer behavior, engagement and loyalty across and between all your websites and apps." *Id.* ¶ 14, n. 2. Plaintiff also pastes into his complaint several slides taken from Bango's website showing how Bango can use information from various sources, including to potentially create something it calls a "BangoID." *Id.* ¶ 20. Plaintiff then combines these statements and images with his own speculation that "Bango and other analytics companies maintain massive digital dossiers on consumers" and that "[o]nce a consumer's identity is

matched with a device's MAC address, a wealth of extremely precise information *can* be gleaned about an individual." *Id.* ¶ 19 (emphasis added).

None of the Bango statements described in the complaint reference the CNN App. Nor do they state that Bango knows, or has access to, any real world identities of any CNN users, including plaintiff, as opposed to anonymized descriptions. Indeed, nowhere in the complaint does plaintiff allege (or set forth facts showing) that any real-world personal identification has been made, could be made, or will be made anytime soon, much less that such identification is the fault of CNN.

### C. Plaintiff's Claim and the Cartoon Network Action

Plaintiff alleges a single cause of action for violation of the VPPA, 18 U.S.C. § 2710. Plaintiff seeks to bring this action as a class action on behalf of "[a]ll persons in the United States [that] used the [App] on their iPhone and who had their Personally Identifiable Information disclosed to Bango." Compl. ¶ 33. Plaintiff does not identify any actual injury that he or other potential class members suffered. Rather, he alleges only that he "and the Class have had their statutorily defined right to privacy violated." *Id.* ¶ 50.

The same attorneys representing plaintiff here have also filed an action against Cartoon Network (who, like CNN, is a subsidiary of TBS, Inc.) related to its app in United States District Court for the Northern District of Georgia (the "Cartoon Network Action"). *See* Declaration of Danielle N. Twait in Support of Motion to Transfer or in the Alternative Dismiss ("Twait Decl.") Ex. 1. The two actions are nearly identical. Both allege that the relevant apps send PII to Bango. *See* Compl. ¶ 14; Twait Decl. Ex. 1, ¶ 12. Both allege that Bango has the ability to use such data to potentially create dossiers on individuals. *See* Compl. ¶ 19; Twait Decl. Ex. 1, ¶ 17. Indeed, many of the allegations in the Cartoon Network Action are exactly the same as the allegations in this action. The only substantive difference between the two actions is that here plaintiff alleges

that an iPhone MAC address is provided to Bango along with a record of the content viewed, and in the Cartoon Network Action, plaintiff alleges that an Android ID is provided to Bango along with a record of content viewed.

## ARGUMENT

**I.     THE COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF GEORGIA**

A district court may transfer an action to "any district . . . where it might have been brought" provided that transfer would be "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The decision to transfer requires "flexible and individualized analysis based on the circumstances of a particular case, and the weight to be afforded each factor is within the discretion of the district court." *Nicholas v. Conseco Life Ins. Co.*, No. 12 C 0845, 2012 WL 1831509, *4 (N.D. Ill. May 17, 2012). Here, there can be no dispute that venue is proper in the Northern District of Georgia where CNN has its headquarters and principal place of business. *See* Compl. ¶¶ 6-7.

The Northern District of Georgia is also more convenient for the parties and witnesses. When assessing convenience of parties and witnesses, courts consider five factors: (1) plaintiff's forum choice; (2) ease of access to evidence; (3) convenience of the witnesses; (4) the situs of material events; and (5) convenience of the parties. *Coll. Craft Companies, Ltd. v. Perry*, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995). Here, the only factor that arguably cuts against transfer is plaintiff's forum choice, but "because plaintiff alleges a class action, plaintiff's home forum is irrelevant." *Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997).

The "ease of access to evidence" and "convenience of witnesses" factors weigh in favor of transfer. CNN is headquartered in Atlanta. Compl. ¶ 6. The majority of relevant information and sources of proof for this matter are expected to come from Atlanta, with some additional

relevant information and sources of proof potentially coming from New York.  *See* Declaration of David Vigilante in Support of CNN's Motion to Transfer or in the Alternative Dismiss Plaintiff's Class Action Complaint ¶ 8.  By contrast, CNN is not aware of relevant information or sources of proof that would come from Illinois. *Id.* ¶ 9.  Similarly, if this case proceeds, all of the witnesses CNN expects to testify for it in this matter work in Georgia, except for one who works in New York. *Id.* ¶ 6. This includes witnesses from the following groups: Audience and Multi-Platform Technologies, Strategic Research & Analytics, CNN Digital Research, and Media Software and Services.  None of the witnesses expected to testify for CNN work in Illinois. *Id.* ¶ 7.

These same facts also make Atlanta the situs of material events. *See, e.g.*, *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) ("The material events in this case concern the conduct of Defendants. The conduct which is the focus of this suit is decisions by Defendants. . . . The relevant decisions would have been made by employees of the Defendants at a headquarters office in Kansas, New York, or California."); *Zojo Solutions, Inc. v. Leviton Mfg. Co., Inc.*, 10 C 881, 2010 WL 4257546, *2 (N.D. Ill. Oct. 20, 2010) (situs of events where defendant's business unit "responsible for engineering, product management, packaging, and sales decisions" for product at issue was located).  With respect to convenience of the parties, CNN is headquartered in Atlanta. Compl. ¶ 6.  And although Mr. Perry is located in Illinois, the class representative's location is not relevant to a Section 1404(a) determination.  *Genden v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 621 F.Supp. 780, 782 (N.D. Ill. 1985).

The interests of justice also favor transfer. "Protecting and advancing the interest of justice is the most compelling factor warranting transfer under § 1404(a) and may be determinative in a particular case, even if convenience of the parties and witnesses might call for

a different result." *Nicholas v. Conseco Life Ins. Co.*, 12 C 0845, 2012 WL 1831509 (N.D. Ill. May 17, 2012) (internal citations and quotations omitted). Here, the Cartoon Network Action is pending in the Northern District of Georgia. That action was filed by the same plaintiffs' counsel as this action and features the same substantive allegations as this action: that Cartoon Network (like CNN) violated the VPPA because its app transmitted device identifiers and viewing records to Bango. In fact, a comparison of the two complaints reveals that many of the allegations in the Cartoon Network Action are exactly the same as those here.

This district has adopted "a strong policy in favor of transferring a case to the district where a related action is pending." *Abbott Labs. v. Selfcare, Inc.*, 98 C 7102, 1999 WL 162805, *2 (N.D. Ill. Mar. 15, 1999). This is because "by preventing duplicative efforts on the part of both the courts and the parties, transfer and subsequent consolidation serve the interests of justice within the meaning of the venue transfer statute." *Id.* It also curbs the risk of inconsistent judgments. *Id.* The risk of inconsistent judgments is particularly relevant here given that Cartoon Network has simultaneously moved to dismiss plaintiff's VPPA claim on the same grounds as CNN seeks dismissal. *See Nicholas*, 2012 WL 1831509, at *4 (ordering transfer where there was "related (substantially identical) litigation" pending and "[f]ar greater efficiency and use of judicial resources would result from the cases being heard together.").[1]

---

[1] The other interest of justice factors either warrant transfer or are neutral. The Northern District of Georgia has a significant interest in this matter because that is where CNN is located. *See e.g. Bonnevier v. Amoena USA Corp.,* 13 C 8231, 2014 WL 537520 (N.D. Ill. Feb. 10, 2014). The action will likely proceed at the same pace in both jurisdictions given that both districts had a median time for disposition for civil cases of 6.8 months in 2013. *See* Twait Decl. Ex. 2 (Administrative Office of the U.S. Courts, *United States District Courts-National Judicial Caseload Profile*).

## II. IF THE COURT IS NOT INCLINED TO TRANSFER THIS ACTION IT SHOULD DISMISS THE COMPLAINT

### A. Plaintiff Fails to State a Claim Under The VPPA

#### 1. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Labels, conclusions and "formulaic recitation[s]" will not suffice. *Twombly*, 550 U.S. at 555. Nor will facts merely consistent with defendant's liability. *Iqbal*, 556 U.S. at 679. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*.

#### 2. The MAC Address Is Not Personally Identifiable Information

Congress enacted the VPPA in 1988 after a Washington D.C. newspaper published a profile of Judge Robert Bork "based on the titles of 146 films his family had rented from a video store." S. Rep. No. 100-599, at 5, *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-5 ("Senate Report"). Under the VPPA, a "video tape service provider" can only be held liable where it "knowingly disclos[es]" to any person "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b).[2] The VPPA defines "personally identifiable information" as "information ***which identifies a person*** as having requested or obtained specific video

---

[2] Plaintiff's VPPA claim ultimately fails for the independent reason that CNN is not a "video tape service provider" under the VPPA in that it does not distribute "prerecorded video cassette tapes or similar audio visual materials." *See* 18 U.S.C. § 2710(a)(4). For purposes of this motion only, however, CNN is not challenging the sufficiency of plaintiff's pleading with respect to prerecorded materials viewed on the App.

materials." *Id.* § 2710(a)(3) (emphasis added). In enacting the VPPA, Congress was focused on the disclosure of real-world identities of individuals. For example, the Senate Report explained that PII is only information "that identifies a ***particular person*** as having engaged in a ***specific transaction***" and that the statute "does not restrict the disclosure of information other than personally identifiable information." Senate Report at 12 (emphasis added).

Given the statute's intended purposes, it is not surprising that in the over 25 years since the VPPA's enactment, no court has ever found that a device number like the MAC address relied on here is PII under the VPPA. Indeed, the one court that has addressed the issue concluded the opposite. In *Viacom Int'l Inc. v. YouTube Inc.,* 253 F.R.D. 256 (S.D.N.Y. 2008), YouTube objected to disclosing to plaintiff its users' YouTube login IDs on the basis that doing so could expose YouTube to liability under the VPPA. The district court rejected YouTube's argument, stating that the "loginID is an anonymous pseudonym that users create for themselves when they sign up with YouTube which without more cannot identify specific individuals." *Id.* at 262 (internal citations and quotations omitted).

Courts have reached the same conclusion under statutes similar to the VPPA, such as the Cable Act which limits the ability of a cable provider to "collect personally identifiable information concerning any subscriber." 47 U.S.C. § 551(b)(1). In *Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713 (10th Cir. 2004), cable subscribers alleged that Comcast violated the Cable Act by maintaining "an identifying number known as a 'unit address' [that] allow[ed] Comcast to match the subscriber's purchase to its billing system." *Id.* at 714. As the Tenth Circuit explained, the "heart of the dispute [was] whether the information stored within Comcast's converter boxes is personally identifiable information." *Id.* at 716. The Tenth Circuit affirmed the district court's ruling that it was not, explaining that without information

from Comcast's billing or management system "one cannot connect the unit address with a specific customer; without the billing information even Comcast would be unable to identify which individual household was associated with the raw data in the converter box." *Id.*

Similarly, in *Klimas v. Comcast Cable Communications, Inc.*, 2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003), *aff'd on other grounds*, 465 F.3d 271 (6th Cir. 2006), Comcast moved to dismiss plaintiff's claim that Comcast violated the Cable Act by collecting users' IP addresses. According to the court, the "dispositive issue in regard to Comcast's Motion [was] whether an IP address is PII under the Cable Act." *Id.* at *8. The court held that it was not, finding that "an IP address, by itself, is not 'specific information about the subscriber.'" *Id.* at *10.[3]

Courts analyzing whether anonymized data such as the MAC address is PII in other contexts have reached the same conclusion.  In *Johnson v. Microsoft*, No. C06-0900RAJ, 2009 WL 179440, *4 (W.D. Wash. June 23, 2009), the court found that Microsoft's collection of user IP addresses did not violate a software licensing agreement that prohibited Microsoft from collecting users' "personally identifiable information" without consent.  The court explained that "[i]n order for 'personally identifiable information to be personally identifiable, it must identify a person.  But an IP address identifies a computer, and can do that only after matching the IP address to a list of a particular Internet service provider's subscribers." *Id*.  Like the IP address in *Johnson*, at most, the MAC address identifies a device, not a person.

Plaintiff's claim here is equally (if not more) attenuated.  Plaintiff merely suggests that Bango *could* potentially use that number, along with other unidentified information Bango *could*

---

[3] In affirming the district court's decision on other grounds, the Sixth Circuit nevertheless confirmed the district court's conclusion that the IP Address did not identify a person.  *See Klimas*, 465 F.3d at 276 n.2.

theoretically collect from other sources, to identify a person. *See* Compl. §§ 15-21. As an initial matter, this is exactly the type of speculative and conclusory allegation that courts must disregard. *See Iqbal*, 556 U.S. at 679 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.'").

Moreover, even if the complaint offered support for the speculative contention that Bango reverse engineers users' identities, that would not retroactively convert the information CNN discloses into PII under the VPPA. *See e.g. Mollet v. Netflix Inc.*, Case No. 5:11-CV-01629-EJD, 2012 WL 3731542, *4 (N.D. Cal. August 17, 2012) (dismissing VPPA claim and explaining that "[t]he fact that Congress outlawed disclosure to persons other than the consumer [under the VPPA] does not mean that Congress intended to prevent every conceivable manner in which a third-party might gain access to a consumer's PII."); *Lake v. Neal*, No. 07 C 2742, 2008 WL 4442603, *3 (N. D. Ill. Sept. 29, 2008) (noting that under Drivers Privacy Protection Act (DPPA), when information was transferred from state DMV to Board of Election it created "an entirely new voting record that was, from then on, under the control of the Board" and thus not afforded protection under the DPPA).

Courts have rejected this "reverse engineering" theory in similar contexts. In *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010 (N.D. Cal. 2012), for example, plaintiffs brought numerous claims against LinkedIn, including for invasion of privacy, based on LinkedIn's alleged sharing of users' unique LinkedIn identification number with third parties. Plaintiffs alleged that "third parties [could] theoretically de-anonymize a user's LinkedIn ID number" by "associate[ing] a LinkedIn user ID and URL of the user's profile page with a user's cookies ID and thus determine a LinkedIn user's identity." *Id.* at 1017. The court dismissed plaintiffs' claim explaining that

"[a]lthough Plaintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is not clear that anyone has actually done so, or what information precisely, these third parties have obtained." *Id.* at 1025.

Put simply, as a matter of law, there is no precedent under VPPA for treating a number like the MAC address as PII.[4]  Because that is the only information the complaint alleges was provided to Bango, the complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B. Plaintiff Lacks Standing Because He Has Not Pleaded Injury In Fact

The complaint also should be dismissed because plaintiff has not alleged any actual, concrete, injury and thus lacks standing under Article III of the U.S. Constitution.  Article III standing requires (1) an injury in fact, which is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To satisfy the injury-in-fact requirement, a plaintiff must establish that has "has sustained or is immediately in danger of sustaining some direct injury." *DH2, Inc. v. U.S. S.E.C.,* 422 F.3d 591, 596 (7th Cir. 2005) (internal citations and quotations omitted). As the Supreme Court recently reiterated, "threatened injury must be certainly impending to constitute injury in fact . . . allegations of possible future injury are not

---

[4] If numerical identifiers like the MAC address here are deemed PII as plaintiff contends, the use of any analytics to measure unique users would be per se violative of the VPPA, regardless of whether the user activity is tied to a cookie, device identifier, IP address, or random number since such numerical identifier could theoretically enable online tracking.  It is inconceivable that such a broad internet regulation would arise from a 1988 statute addressing video store rental records.

sufficient" to establish standing. *Clapper v. Amnesty Intern. USA et al.*, 133 S.Ct 1138, 1147 (2013) (internal citations and quotations omitted).

Plaintiff does not allege that CNN disclosed his real name or any other information identifying him as a person to Bango. Likewise, plaintiff does not allege that Bango used the MAC address identify him or anyone else in the putative class. Nor does plaintiff allege any economic injury. Instead, plaintiff suggests that because Bango ***could, potentially*** use a MAC address, in combination with various other unidentified sources of information, to one day identify plaintiff or others in the putative class, he "and the Class have had their statutorily defined right to privacy violated." Compl. ¶ 50. Such speculative allegations are not sufficient to establish Article III standing for two reasons.

***First***, the VPPA should not be interpreted to support standing based on a statutory violation without concrete particularized harm. In *Sterk v. Best Buy Stores, L.P.*, No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012), the plaintiff alleged that Best Buy violated the VPPA by sharing and retaining records of plaintiff's movie purchases. *Id.* at *1-2. The court rejected plaintiff's argument in opposition to Best Buy's motion to dismiss that "a claim of violation of a statutory right under the VPPA alone is sufficient injury-in-fact to confer Article III standing." *Id.* at *5. Specifically, the *Sterk* court explained:

> None of the Plaintiff's theories establish an injury-in-fact for his disclosure or retention claims under the VPPA. The SCA and the VPPA require a plaintiff to be "aggrieved" meaning the individual has suffered an Article III injury-in-fact. Therefore, a plaintiff must plead an injury beyond a statutory violation to meet the standing requirement of Article III. Plaintiff argues that a statutory violation is adequate to meet this requirement. However, while Congress is permitted to expand standing to the extent permitted under Article III, Congress cannot abrogate the basic standing requirement that an individual suffer an actual redressable injury-in-fact.

*Id.* (internal citations omitted).[5]

***Second***, even if the VPPA supports standing based on a statutory violation, plaintiff must allege that he personally was identified by the disclosure allegedly made by CNN, not just that such identification is theoretically possible. As discussed above, plaintiff does not do so. He does not allege that CNN provided information to Bango that identified him or that Bango used the MAC address the App allegedly transmitted to Bango to identify him. As such, he has not alleged an injury-in-fact that is concrete and particularized and actual or imminent, and lacks standing. *See Lujan*, 504 U.S. at 560-61; *Clapper*, 133 S.Ct at 1147.

## CONCLUSION

For the foregoing reasons, this Court should transfer this matter to the District Court for the Northern District of Georgia or, in the alternative, dismiss the complaint with prejudice.

---

[5] CNN recognizes that the court in *In re Hulu Privacy Litig.*, No. C 11-03674 LB, 2013 WL 6773794, *8 (N.D. Cal. Dec. 20, 2013) ("*Hulu*") took a more expansive view of standing under the VPPA. In *Hulu*, however, plaintiffs alleged that Hulu transmitted to third parties "information that identified Plaintiffs and Class Members personally" including Facebook and Hulu IDs, which linked directly to their Hulu profile pages that included the users' names and locations, thus injuring them. *See In re Hulu Privacy Litig.*, No. C 11-03674, 2012 WL 3282960, *2 (N.D. Cal. Aug. 10, 2012). There are no such allegations here.

Dated: April 25, 2014

By: */s/ Danielle N. Twait*
Clinton E. Cameron
clinton.cameron@troutmansanders.com
Danielle N. Twait
danielle.twait@troutmansanders.com
TROUTMAN SANDERS LLP
55 W. Monroe Street, Suite 3000
Chicago, IL 60603
(312) 759-5944 (telephone)
(312) 759-1939 (facsimile)

Robert J. Huff Jr. (6225211)
bart@zwillgen.com
ZWILLGEN PLLC
300 N LaSalle St, Suite 4925
Chicago, IL  60654
(312) 685-2278 (telephone)

Marc Zwillinger (6226447)
marc@zwillgen.com
ZWILLGEN PLLC
1900 M. Street NW, Suite 250
Washington, DC 20036
(202) 706-5205 (telephone)
(202) 706-5298 (facsimile)

*Attorneys for Defendants*

-16-

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2014, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER OR IN THE ALTERNATIVE DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

> Jay Edelson
> Benjamin H. Richman
> Rafey S. Balabanian
> James Dominick Larry
> EDELSON PC
> 350 North LaSalle Street, Suite 1300
> Chicago, IL 60654

*/s/ Danielle N. Twait*
Danielle N. Twait