# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RYAN PERRY, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>CABLE NEWS NETWORK, INC., a Delaware corporation, and CNN INTERACTIVE GROUP, INC., a Delaware corporation,<br><br>　　　　*Defendants*. | Case No. 1:14-cv-2926-ELR |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING *ELLIS V. CARTOON NETWORK*

**TABLE OF CONTENTS**

**INTRODUCTION**................................................................................................1

**ARGUMENT**......................................................................................................2

**I.     Eleventh Circuit Precedent Requires that Perry Be Permitted to Amend His Complaint**................................................................................2

**II.    Perry Is Ready and Willing to Add Allegations Sufficient to Meet the *Ellis* Test**................................................................................................4

      **A.     CNN developed its app specifically to create subscriber relationships**........................................................................................5

      **B.     Perry will add allegations to explain why his downloading of the app is the equivalent of formal registration**................................7

      **C.     Perry subscribes to CNN through his cable provider**......................8

**CONCLUSION**................................................................................................11

# **TABLE OF AUTHORITIES**

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Brisson v. Ford Motor Co.*, 349 F. App'x 433 (11th Cir. 2009)................................2

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001)....................................................2

*City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262 (11th Cir. 2015) .......................3

*City of Miami v. Wells Fargo & Co.*, 801 F.3d 1258 (11th Cir. 2015).......................3

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015).......................*passim*

*Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980) .........................................2

*Shipner v. E. Air Lines, Inc.*, 868 F.2d 401 (11th Cir. 1989)......................................3

*United States v. Herring*, 993 F.2d 784 (11th Cir. 1993).....................................9, 10

**UNITED STATES DISTRICT COURT CASES**

*Ellis v. Cartoon Network, Inc.*, No. 1:14-CV-484-TWT,
    2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ..................................................4

*In re Hulu Privacy Litig.*, No. 11-cv-03764,
    2012 WL 3282860 (N.D. Cal. Aug. 10, 2012) ...............................................4

*Jeffries v. United States*, No. 1:07-CR-RWS-LTW,
    2013 WL 499810 (N.D. Ga. Feb. 11, 2013) ...................................................3

*Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293 (N.D. Ga. 2010)...3

*Moon v. Cincinnati Ins. Co.*, 975 F. Supp. 2d 1326 (N.D. Ga. 2013)....................2, 3

*Yershov v. Gannett Satellite Information Network, Inc.*, --- F.3d ----,
    No. 14-cv-13112, 2015 WL 2340752 (D. Mass. May 15, 2015) ............10, 11

**STATUTES AND RULES**

Fed. R. Civ. P. 15 ................................................................................................... 3

Video Privacy Protection Act, 18 U.S.C. § 2710 ........................................... 1, 8, 9

**MISCELLANEOUS**

Brian Stetler, *Disney Stock Hit by ESPN Fears*, CNN Money (Aug. 5, 2015),
    http://cnnmon.ie/1OQkpPr ................................................................................ 9

Brian Stetler, *Fox News to Earn $1.50 Per Subscriber*, CNN Money
    (Jan. 16, 2015), http://cnnmon.ie/1IIpGqp ..................................................... 11

*Getting the User's Location*, Apple, http://apple.co/1M24xto ................................ 8

Gunnar Klauberg, *Why Brands Need Mobile Apps*, Adobe Digital Marketing
    Blog (Sept. 10, 2014), http:adobe.ly/1MhiG33 ................................................ 6

*In-app Purchase for Developers*, Apple, https://developer.apple.com/in-app-
    purchase/ .......................................................................................................... 8

Keach Hagey & Shalini Ramachandran, *Pay TV's New Worry: "Shaving"
    the Cord*, Wall St. J. (Oct. 9, 2014), http://on.wsj.com/1BYCPpS ................. 9

Noah Feldman, *What You Watch on Your Phone Might Not Be Private*,
    BloombergView (Oct. 12, 2015), http://bv.ms/1GEzPSI .................................. 7

*Notifications*, Apple, https://developer.apple.com/notifications ............................. 8

Sara Angeles, *Mobile Website vs. Mobile App: What's the Difference?*,
    BusinessNewsDaily (July 15, 2014), http://goo.gl/hWqijX ............................ 5

*Senior Mobile Editor – CNN Digital*, Time Warner, https://goo.gl/ziD9QO
    (last accessed Nov. 19, 2014) .......................................................................... 6

Silicus Techs., *Does Your Organization Need a Mobile App or a Mobile
    Website?*, FearlessFlyer (Sept. 7, 2015), http://goo.gl/VzoYQF ..................... 5

iii

iv

Time Warner, *2012 Annual Report*, http://goo.gl/jwGXDP ................................... 6, 7

Time Warner, *2013 Annual Report*, http://goo.gl/0ugnaV ......................................... 5

Time Warner, *2014 Annual Report*, http://goo.gl/QdhoOC ................................. 6, 10

Time Warner, Inc., Annual Report (Form 10-K) 48–49 (Feb. 26, 2015),
     http://1.usa.gov/1L6SuHh ............................................................................... 10

Tyler White, *Are Mobile App Users More Loyal?*, Adobe Digital Marketing
     Blog (Nov. 6, 2013), http://adobe.ly/RcPLl2 .................................................... 6

*Understanding Mobile Apps*, OnGuardOnline.gov, http://1.usa.gov/1MPjI6N ........ 8

## INTRODUCTION

Plaintiff Ryan Perry filed this case against Cable News Network, Inc. and CNN Interactive Group, Inc. (collectively, "CNN") to obtain redress for their unauthorized disclosure of his personally identifiable information in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. In response to Perry's first amended complaint, CNN filed a motion to dismiss, which is fully briefed. (Dkts. 49, 52, 53.) However, the case was stayed on April 6, 2015, pending the Eleventh Circuit's ruling in *Ellis v. Cartoon Network* on the issue of what constitutes "personally identifiable information" under the VPPA. (Dkt. 58, 59.) The Eleventh Circuit issued its opinion on October 9, 2015, *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015), and this Court lifted the stay on November 5, 2015, giving the parties the option to file supplemental briefing, (dkt. 61).

However, the *Ellis* court did not address the district court's analysis of whether the plaintiff had sufficiently pleaded the disclosure of "personally identifiable information." *Ellis*, 803 F.3d at 1258 n.2. Instead, it affirmed on the alternate grounds that the plaintiff was not a "subscriber" of Cartoon Network and therefore was not a "consumer" under the VPPA. *Id.* at 1257–58. Under the new standard articulated by the *Ellis* court, the subscriber inquiry focuses on the nature of the relationship between the user and the app provider. While a person need not

1

necessarily pay the app provider in order to be a subscriber, there must be "some type of commitment, relationship, or association" between the two. *Id.* at 1256.

Because the Eleventh Circuit articulated a new standard for plaintiffs to properly plead that they are subscribers under the VPPA, Perry must be allowed to amend his complaint. In his amended complaint, Perry will add allegations showing that his relationship with CNN falls squarely within the Eleventh Circuit's subscriber test announced in *Ellis*.

## ARGUMENT

**I.     Eleventh Circuit Precedent Requires that Perry Be Permitted to Amend His Complaint.**

When a plaintiff has relied on one rule of law in pleading his claim, he must be allowed an opportunity to amend his complaint if an intervening appellate decision changes controlling precedent. *See Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001); *Marrero v. City of Hialeah*, 625 F.2d 499, 512 (5th Cir. 1980); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434–35 (11th Cir. 2009). As long as a plaintiff is "ready, willing, and able to plead that [he] meet[s]" the new requirements, he must be allowed to so. *Brisson*, 349 Fed. App'x at 435.

This principle is so vital to the just administration of the federal notice-pleading regime that it is one of the few occasions where district courts will permit amendment even *after* final judgment has been entered. *See Moon v. Cincinnati Ins. Co.*, 975 F. Supp. 2d 1326, 1328 (N.D. Ga. 2013); *Jeffries v. United States*,

2

No. 1:07-CR-311-RWS-LTW, 2013 WL 498810, at *1 (N.D. Ga. Feb. 11, 2013) (noting that reconsideration is an "extraordinary remedy reserved for limited situations," one of which is "an intervening change in the law"). *Before* a judgment is entered, the standard for amendment is far more relaxed: "leave to amend should be freely given when justice so requires." *City of Miami v. Wells Fargo & Co.*, 801 F.3d 1258, 1267 (11th Cir. 2015) (citing Fed. R. Civ. P. 15) (internal quotations omitted). *See also City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1286 (11th Cir. 2015) ("Unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.") (quoting *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir.1989); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1298 (N.D. Ga. 2010) ("[L]eave should be granted with extreme liberality because cases should be decided on the merits, rather than on the pleadings or technicalities.") (internal citations and quotations omitted). Considering that an intervening change in controlling precedent satisfies even the strict reconsideration standard, there should be no question that leave to amend is justified under the liberal pre-judgment standard.

Here, the Eleventh Circuit's decision in *Ellis* changed what Perry needs to plead to show that he is a "subscriber" under the VPPA. District court decisions before *Ellis* indicated that a plaintiff could meet the requirement for pleading that he was a subscriber by alleging that he had downloaded and installed an app. *See,*

3

*e.g.*, *Ellis v. Cartoon Network, Inc.*, No. 1:14-CV-484-TWT, 2014 WL 5023535, at *2 (N.D. Ga. Oct. 8, 2014); *In re Hulu Privacy Litig.*, No. 11-cv-03764, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012). Since no authority to the contrary existed when Perry filed his amended complaint and responded to CNN's motion to dismiss, he did not have reason to allege anything further. However, the Eleventh Circuit has now clarified the law in this Circuit, and it appears as though Perry's initial allegations may not meet the new pleading standard. As the pending motion to dismiss has not yet even been ruled on, the Court should "freely grant" Perry leave to amend his complaint with the benefit of the *Ellis* decision.

## II.  Perry Is Ready and Willing to Add Allegations Sufficient to Meet the *Ellis* Test.

The Eleventh Circuit's new test focuses on the nature and closeness of the relationship between the plaintiff and the defendant to determine whether the plaintiff is a subscriber. Specifically, the court looked for an "ongoing commitment or relationship between the user and the entity which owns and operates the app." *Ellis*, 803 F.3d at 1257. Perry has such a relationship with CNN, and if given an opportunity to amend, he would be able to meet the new test by making more specific allegations about the nature and extent of that relationship.

To satisfy the new rule, Perry is ready to amend his complaint to include several additional allegations. First, he will plead that CNN's express purpose in creating and distributing an app was to create ongoing relationships with app users.

4

Second, he will allege facts showing that the relationship between him and CNN solely based on his use of the app is as close—or closer—than a user who had completed a formal registration process. Third, Perry will allege that he subscribes to CNN through his cable provider, creating the required relationship. These allegations fall squarely within the Eleventh Circuit's new test and described in further detail below.

### A. CNN developed its app specifically to create subscriber relationships.

Because the *Ellis* test revolves around the relationship between Perry and CNN, the conduct of both parties in creating that relationship is now relevant. Therefore, Perry will add allegations regarding *why* CNN developed an app in the first place. Simply put, CNN developed its app—at great expense—to create exactly the type of ongoing relationship that the Eleventh Circuit found important in determining whether a user is a subscriber.

Developing a smartphone app is significantly more expensive than other forms of online presence. *See* Silicus Techs., *Does Your Organization Need a Mobile App or a Mobile Website?*, FearlessFlyer (Sept. 7, 2015), http://goo.gl/VzoYQF. Businesses pay a premium to develop apps because having an app gives them "more control over their presence on a device than they would [have] with a mobile website." Sara Angeles, *Mobile Website vs. Mobile App: What's the Difference?*, BusinessNewsDaily (July 15, 2014), http://goo.gl/hWqijX.

The goal of releasing an app is to "allow brands to create a solid mobile relationship strategy." Gunnar Klauberg, *Why Brands Need Mobile Apps*, Adobe Digital Marketing Blog (Sept. 10, 2014), http://adobe.ly/1MhiG33. It works, too. A study by data analytics company Adobe found that "[u]sers of mobile apps are more loyal to the brand versus those who just visit the website from their mobile device." Tyler White, *Are Mobile App Users More Loyal?*, Adobe Digital Marketing Blog (Nov. 6, 2013), http://adobe.ly/1RcPLl2.

These aren't simply generic allegations. Right now, CNN has a job posting for a "senior mobile editor" whose main job will be to "drive a mobile-first culture across CNN." *Senior Mobile Editor – CNN Digital*, Time Warner, https://goo.gl/ziD9QO (last accessed Nov. 19, 2015). In other words, CNN is hiring a full-time, senior editor whose job will be to create a close, enduring relationship with mobile app users. *See id.* "[M]obile first" isn't a flash-in-the-pan idea for CNN either. Every year in its annual reports to its shareholders, CNN's parent company, Time Warner, emphasizes the importance of growing and holding its mobile audience by offering content through apps. *See, e.g.*, Time Warner, *2014 Annual Report* 8, http://goo.gl/QdhoOC; Time Warner, *2013 Annual Report* 4, 6, http://goo.gl/0ugnaV; Time Warner, *2012 Annual Report* 12, http://goo.gl/jwGXDP ("The idea is to give consumers new ways to access our TV shows, movies and journalism—on new platforms, on new devices, when and

where they want … This is why [CNN direct parent] Turner Broadcasting has positioned itself at the forefront of TV Everywhere, making more than 1,000 hours of on-demand content and live streams of CNN … available to more than 80 million subscribers[.]").

In sum, Perry will allege that CNN's actions and its statements to its shareholders show that it believes it has a subscriber relationship with mobile users as envisioned by the Eleventh Circuit. It would be unfair to allow CNN to treat mobile users as subscribers only when convenient (in shareholder reports), and not when it's inconvenient (in lawsuits).

> **B.    Perry will add allegations to explain why his downloading of the app is the equivalent of formal registration.**

One factor that the *Ellis* Court considered in evaluating a subscriber relationship is whether the user had to "register" to use the app. *Ellis*, 803 F.3d at 1257. Registration is important not for its own sake, but because it creates the "ongoing relationship" that is the *sine qua non* of being a subscriber under the VPPA. *See id.* Even though the CNN app does not require formal registration, downloading, installing, and running this particular app creates a "subscriber" relationship under *Ellis*.

Perry is ready to allege that apps are so powerful that the extent of their functionality explains why CNN didn't require him to register for or log into its app: it didn't need to. *See* Noah Feldman, *What You Watch on Your Phone Might*

7

*Not Be Private*, BloombergView (Oct. 12, 2015), http://bv.ms/1GEzPSI. Consider the type of information a registration form might ask for. Email address? Apps don't need to send emails, because they can simply pop up a notification on a user's phone. *Notifications*, Apple, https://developer.apple.com/notifications. Credit card number? If customers want to make a purchase, apps have an integrated way to collect payment without requiring a separate login. *In-app Purchase for Developers*, Apple, https://developer.apple.com/in-app-purchase. Location? Apps can use the phone's GPS to figure out a user's precise location. *Getting the User's Location*, Apple, http://apple.co/1M24xto.

Whether CNN accessed this or other similar information is irrelevant; it is enough that CNN could do so seamlessly and automatically if it ever needed to. *See generally Understanding Mobile Apps*, OnGuardOnline.gov, http://1.usa.gov/1MPjI6N (describing the breadth of access that mobile apps have to personal data). With all of this information available automatically, once a user installs the CNN app on their device, they're *de facto* registered. The same relationship is created as if registration were required. Adding allegations to this effect will allow Perry to demonstrate that he is therefore a CNN subscriber.

**C.    Perry subscribes to CNN through his cable provider.**

The VPPA forbids disclosure of "personally identifiable information concerning *any* consumer of" a video provider, 18 U.S.C. § 2710(b)(1) (emphasis

added). As long as a person is a "subscriber of goods or services" (and therefore a "consumer") of the video provider, then that person is covered by the VPPA's anti-disclosure provisions. *See* 18 U.S.C. § 2710(a)(3). If Perry is permitted to amend his complaint, he will add allegations that at all times relevant to this litigation, he subscribed to CNN through his cable provider. Under the *Ellis* court's new test, that's more than enough to meet the pleading standard for being a subscriber under the VPPA, first because the common meaning of "subscribers" includes subscribers to cable television channels, and second because Perry's relationship with CNN satisfies the factors that the *Ellis* court found persuasive.

To determine whether an app user is a subscriber under the VPPA, the *Ellis* court focused primarily on the "ordinary meaning of the term 'subscriber.'" *Ellis*, 803 F.3d at 1255. In common usage, there can be no question that people who receive a certain television channel in their homes "subscribe" to that channel. *See, e.g.*, Brian Stetler, *Disney Stock Hit by ESPN Fears*, CNN Money (Aug. 5, 2015), http://cnnmon.ie/1OQkpPr (reporting on ESPN's "subscriber declines"); Keach Hagey & Shalini Ramachandran, *Pay TV's New Worry: "Shaving" the Cord*, Wall St. J. (Oct. 9, 2014), http://on.wsj.com/1BYCPpS ("[T]he top 40 most widely distributed channels in 2010—household names like CNN, ESPN and USA—have lost an average of 3.2 million subscribers[.]"). *See also United States v. Herring*, 993 F.2d 784, 786 (11th Cir. 1993) (describing a situation where "the ultimate

consumer *subscribes to* … [a] particular pay-television channel") (emphasis added).

CNN, specifically, sees its viewers as subscribers, regardless of which medium they're using to access CNN content. *See* Time Warner, *2012 Annual Report* 12, *supra* (referring to viewer across devices as "subscribers"). Time Warner, regularly refers to its television viewers as subscribers, including in its filings with the SEC. *See, e.g.*, Time Warner Inc., Annual Report (Form 10-K) 48–49 (Feb. 26, 2015), http://1.usa.gov/1L6SuHh (breaking out "[s]ubscription" revenue for CNN's direct parent); Time Warner, *2014 Annual Report* 5, *supra* (discussing a service that "allows subscribers to watch CNN's news and original programming live and on demand"). Lest CNN argue that it regards app users and television viewers differently, its parent companies have made clear that they view CNN's app offerings as a natural extension of its television programming. *See* Time Warner, *2014 Annual Report* 12, *supra* (describing how Time Warner and Turner "enhance the value of traditional pay-TV subscriptions by making access to [their] networks' content available on multiple devices via an Internet connection").

Perry's relationship with CNN as a subscriber to its television network also meets nearly all of the factors that the *Ellis* court found persuasive in *Yershov v. Gannett Satellite Information*, — F. Supp. 3d —, No. 14-cv-13112, 2015 WL

2340752 (D. Mass. May 15, 2015): "payment, registration, commitment, delivery, [expressed association,] and/or access to restricted content." *Ellis*, 803 F.3d at 1256. Perry, through his cable and satellite providers, pays CNN a discrete portion of his monthly cable bill. *See* Brian Stetler, *Fox News to Earn $1.50 Per Subscriber*, CNN Money (Jan. 16, 2015), http://cnnmon.ie/1IIpGqp ("CNN currently earns 61 cents per subscriber per month[.]"). That payment is made each and every month, and it's made in exchange for delivery of content that is only available to CNN subscribers. Moreover, Perry can use his status as a CNN subscriber to watch live television programming through the CNN app.

Perry may interact with CNN in different ways—such as by watching television, using its website, or installing its app—but the *Ellis* test focuses on the *relationship* between Perry and CNN, not how Perry accesses CNN's content. Because Perry has created the requisite relationship with CNN by subscribing to its cable television channel, he is CNN's subscriber, no matter how he interacts with the company. Therefore adding these allegations will allow Perry to show that he is a subscriber under the Eleventh Circuit's new test.

## CONCLUSION

The Court should allow Perry to amend his complaint, or, in the alternative, grant him leave to file a motion to amend under Rule 15 before deciding CNN's Motion to Dismiss.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **RYAN PERRY**, individually and on behalf of all others similarly situated, |
| Dated: November 19, 2015 | By: s/ J. Dominick Larry |
|  | One of Plaintiff's Attorneys |

                                      Jay Edelson (*pro hac vice*)
                                      jedelson@edelson.com
                                      Rafey S. Balabanian (*pro hac vice*)
                                      rbalabanian@edelson.com
                                      Benjamin H. Richman (*pro hac vice*)
                                      brichman@edelson.com
                                      J. Dominick Larry (*pro hac vice*)
                                      nlarry@edelson.com
                                      EDELSON PC
                                      350 North LaSalle Street, Suite 1300
                                      Chicago, IL 60654
                                      Tel: 312.589.6370
                                      Fax: 312.589.6378

                                      Jennifer Auer Jordan
                                      Georgia Bar No. 027857
                                      jordan@ssjwlaw.com
                                      SHAMP SPEED JORDAN WOODARD, LLC
                                      1718 Peachtree Street, Suite 660
                                      Atlanta, GA 30309
                                      Tel: 404.893.9400
                                      Fax: 404.872.3745

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiff certifies that the pleading has been prepared in Times New Roman, 14-point type, which is of the font selections approved by the Court in Local Rule 5.1(B).

s/ J. Dominick Larry

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2015, I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ J. Dominick Larry