**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RYAN PERRY, individually and on behalf of all others similarly situated, | |
| | Case No. 1:14-cv-02926-ELR |
| *Plaintiff,* | |
| *v.* | |
| CABLE NEWS NETWORK, INC., a Delaware corporation, and CNN INTERACTIVE GROUP, INC., a Delaware corporation, | |
| | |
| *Defendants*. | |

**[PROPOSED] RESPONSE TO
<u>TO PLAINTIFF'S SUPPLEMENTAL BRIEF</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................1

RELEVANT BACKGROUND ...........................................................................2

ARGUMENT ....................................................................................................5

I. The Proposed Amendment is Futile ..........................................................5

    A. The Complaint Would Still Only Allege Disclosure of a Device
    Identifier, Which is Not Personally Identifiable Information…...……...5

    B. Plaintiff's Additional Allegations Would Not Make Him a
    "Subscriber" Under the VPPA………………………………………….7

        i. CNN's Creation of the App Does Not Create A Subscriber
        Relationship ..............................................................................8

        ii. Plaintiff's Argument That Downloading an App is the
        Equivalent of Registering Has Already Been Rejected...........11

        iii. Inclusion of CNN in Plaintiff's Cable TV Package Does
        Not Make Plaintiff a Subscriber of the CNN App...................12

        iv. Even if Plaintiff Subscribes to the CNN Network, That Does
        Not Make Him a "Subscriber" With Respect to the App….......15

II. The Eleventh Circuit's *Ellis* Decision Does Not Require Amendment ........17

CONCLUSION .................................................................................20

## **PRELIMINARY STATEMENT**

Plaintiff's supplemental brief regarding the effect of *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015) asks the Court to allow Plaintiff to amend his complaint—notably, for a second time—instead of deciding CNN's pending motion to dismiss. *See* Plaintiff's Supplemental Memorandum of Law Regarding Ellis v. Cartoon Network 11, ECF No. 63 ("Pl.'s Suppl. Mem. of Law"). The Court should decline this request because Plaintiff's VPPA claim would remain insufficient as a matter of law, rendering amendment futile. Plaintiff still only alleges that CNN transmitted an anonymous device identifier to Bango. But two judges in this district—as well as numerous judges throughout the country—have found that device identifiers are not personally identifiable information.

The allegations Plaintiff seeks to add also will not make him a "subscriber" under the VPPA. They add ***none*** of the characteristics of subscribership described by the Eleventh Circuit in *Ellis*: payment, registration, provision of personal information, creation of an ID or profile, or access to restricted content. *See Ellis*, 803 F.3d at 1257. Instead, Plaintiff seeks to add irrelevant allegations that CNN spent money to create the App and wants people to use the App. Neither of these contentions renders Plaintiff a subscriber. Plaintiff also seeks to add generic allegations regarding how "powerful" apps are to suggest that downloading an app

is equivalent to registration, even though the Eleventh Circuit already rightfully found that "downloading of a mobile app . . . to watch free content, without more, does not a 'subscriber' make." *Id*.   Finally, Plaintiff seeks to add allegations that he is somehow a subscriber to the CNN App because he purportedly subscribes to the CNN *television network*.  First, this is incorrect (he subscribes to a cable provider or satellite that includes CNN in its offering).  Moreover, it is entirely irrelevant to whether he subscribed to the App under the Eleventh Circuit rubric or otherwise.

Plaintiff suggests that the decision in *Ellis* requires that the Court permit him to amend his complaint notwithstanding the futility of doing so.  No such rule exists. Indeed, the Eleventh Circuit in *Ellis* did not allow plaintiff there to amend his complaint in light of the court's ruling.  There is similarly no basis in this case to allow Plaintiff to amend his complaint again. The court should rule on CNN's pending motion to dismiss and dismiss Plaintiff's claim with prejudice.

### RELEVANT BACKGROUND[1]

Plaintiff filed his first complaint on February 18, 2014.  *See* Complaint, Feb. 18, 2014, ECF No. 1. He filed his second complaint on June 30, 2015.  *See* Amended Complaint ("Am. Compl."), June 30, 2014, ECF No. 25.  The Amended Complaint

---

[1] CNN's original Motion to Dismiss briefing and Supplemental Brief in Support Of Motion To Dismiss contain a more detailed recitation of relevant background.

alleged that when an iPhone user views a video on CNN's iPhone app (the "App"), the App discloses the iPhone's MAC address to Bango. *Id.* ¶ 14. The Amended Complaint alleged that Plaintiff used the App to read news stories and watch videos. *Id.* ¶ 34. It did not allege that he: paid any money to read those stories or watch those videos or for the App itself; established an account or registered with CNN; provided any personal information to CNN; or that CNN knew who he was. It also did not allege that he signed up for any periodic services from CNN, or gained access to restricted CNN content.

After the parties briefed CNN's Motion to Dismiss the Amended Complaint, the case was stayed pending appeal of Judge Thrash's dismissal of the nearly identical action brought against CNN's sister company, Cartoon Network. *See Ellis v. Cartoon Network, Inc.*, No. 1:14-CV-484-TWT, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) (the "Cartoon Network Action"). Like this action, the Cartoon Network Action alleged that the relevant app sent a device identifier to Bango. Like this action, it alleged only that plaintiff downloaded a free app and used it to watch free videos. The ***only*** difference between the two actions is that this case involves an iPhone and that case involved an Android phone.

Judge Thrash dismissed the Cartoon Network Action on the ground that an Android ID was not personally identifiable information under the VPPA. The

Eleventh Circuit affirmed Judge Thrash's dismissal, but on the ground that the plaintiff was not a "subscriber" of Cartoon Network, and thus not a "consumer" under the VPPA.[2] The Eleventh Circuit did not disturb Judge Thrash's conclusion that a device identifier was not personally identifiable information or grant plaintiff leave to amend his complaint.  *Ellis*, 803 F.3d at 1258 n.2.

On November 5, 2015, this Court lifted the stay and authorized the parties to submit supplemental briefs addressing the Eleventh Circuit's decision. *See* ECF No. 61. In its brief, CNN explained that the Eleventh Circuit's holding that downloading a free mobile app and watching free content on that app does not make someone a "subscriber" is binding on this Court, and dispositive that Plaintiff is not a "subscriber" under the VPPA.  *See* ECF No. 62 8-9.  In his brief, Plaintiff acknowledged that the allegations in the Amended Complaint are likely insufficient to render him a "subscriber" under *Ellis*.  *See* Pl.'s Suppl. Mem. of Law at 4.  He nevertheless requested that he be allowed to amend his complaint for the second time given the Eleventh Circuit's decision.  *Id.* at 1.  Plaintiff did not attach a proposed Second Amended Complaint to his supplemental brief but generally described the allegations he intended to add**.**  None of those allegations suffice to render him a

---

[2] The Eleventh Circuit rejected Plaintiff-Appellant's Petition for Rehearng En Banc on December 11, 2015.

subscriber—even under his latest assertions, Plaintiff still only downloaded a free app to watch free videos.  And the only information which CNN provided to Bango was a device identifier.

## ARGUMENT

### I.      The Proposed Amendment is Futile

Allowing Plaintiff to amend his complaint again would be futile.  "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (internal quotation marks omitted).  This includes where claims will be "insufficient as a matter of law."  *Id.*  Here, Plaintiff's amended claim will be insufficient for two reasons.  *First*, he will only allege a disclosure of a device ID which, as nearly every court to address the issue has concluded, is not personally identifiable information under the VPPA.  *Second*, he will not allege anything that would make him a "subscriber" under binding Circuit precedent.

### A.      The Complaint Would Still Only Allege Disclosure of a Device Identifier, Which is Not Personally Identifiable Information

Amendment is futile because even with his new allegations, Plaintiff only alleges that CNN transmitted a device identifier to Bango.   As discussed in CNN's motion to dismiss, this is insufficient to state a claim under the VPPA because device identifiers are not personally identifiable information under the VPPA.

Two courts in this District have reached that conclusion on the same theory Plaintiff espouses here.  In the Cartoon Network Action, Judge Thrash found that an Android ID was not personally identifiable information because it was not "akin to a name" since "[w]ithout more, an Android ID does not identify a specific person." *Ellis*, 2014 WL 5023535 at 3.  In doing so, he explained that "[f]rom the information disclosed by the Defendant alone, Bango could not identify the Plaintiff or any other members of the putative class." *Id*.  In *Locklear v. Dow Jones & Co., Inc.,* No. 1:14-CV-00744 2015 WL 1730068 (N.D. Ga. Jan. 23, 2015), Judge Cohen reached the same conclusion on allegations that Dow Jones' Wall Street Journal app transmitted Roku serial numbers and video records to analytics company mDialog.  Judge Cohen held that like the Cartoon Network Action, "third party mDialog had to take further steps, *i.e.*, turn to sources other than Dow Jones, to match the Roku number to Plaintiff," and that therefore the information was not personally identifiable.  *Id.* at *6.

These decisions are consistent with multiple cases outside this District as well, which are more fully addressed in CNN's motion to dismiss briefing, notices of supplemental authority, and supplemental brief.  *See* ECF Nos. 49, 53, 55, 56 and 62.  Even with Plaintiff's new allegations, the only thing he alleges is provided to

6

Bango is a device identifier.  Plaintiff's proposed amendment is futile given the overwhelming authority that such a device identifier is not personally identifiable information under the VPPA.

### B. Plaintiff's Additional Allegations Would Not Make Him a "Subscriber" Under the VPPA

Amendment is futile on the additional ground that even with the allegations Plaintiff seeks to add, he will not be a subscriber under the VPPA.  Notably, Plaintiff concedes that the allegations in the Amended Complaint are likely not sufficient under *Ellis*.  *See* Pl.'s Suppl. Mem. of Law at 4.  He claims, however, that if given the opportunity to amend a second time, he could "mak[e] more specific allegations" about "the nature and extent" of his "relationship" with CNN sufficient to demonstrate that he was a subscriber.  *Id*. at 6.  He can do no such thing.

Plaintiff's proposed new allegations do not add ***any*** of the characteristics of subscribership identified by the Eleventh Circuit in *Ellis*.  He still "did not provide any personal information to [CNN], did not make any payments to [CNN] for use of the [CNN] app, did not become a registered user of [CNN] or the [CNN] app, did not receive a [CNN] ID, did not establish a [CNN] profile, did not sign up for any periodic services or transmissions, and did not make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content."  *See Ellis*, 803 F.3d at 1257.  Nor do they change that he "simply watched

7

video clips on the [CNN] app, which he downloaded onto his [] smartphone for free."
*See Id*.   Instead, the new allegations "merely provide Plaintiff an opportunity to
repackage [his] prior legal theory."  *See In re Kidd*, No. 09-74412-MGD, 2012 WL
909691, at *2-4 (Bankr. N.D. Ga. Feb. 8, 2012) (denying motion for leave to amend).
Under such circumstances, amendment is not appropriate.

> ### i.  CNN's Creation of the App Does Not Create A Subscriber Relationship

The mere fact that CNN created the App and wants people to view content on
the App does not make every person who uses the App a "subscriber."  Nonetheless,
Plaintiff claims that his new allegations will show that "CNN developed its app—at
great expense—to create exactly the type of ongoing relationship that the Eleventh
Circuit found important in determining whether a user is a subscriber."  Pl.'s Suppl.
Mem. of Law at 5.  But the Eleventh Circuit did not say (or suggest) that a company's
investment in an app or desire that people view its content somehow creates a
subscriber relationship.   The fundamental nature of media publication is that a
content creator wants that content to be viewed.  If the mere creation of an app and
desire to garner viewership were enough to create a subscriber "relationship," any
person that accessed any content created by any media company would be a
subscriber.  This is an untenable test which contravenes the Eleventh Circuit analysis
and decision.

8

Plaintiff's reliance on generic articles about apps are irrelevant. Plaintiff points to an article which asserts that developing a smartphone app is more expensive than developing other forms of online presence. *Id*.   But he offers no plausible explanation, let alone cite to any case authority, for why the cost to create the distribution platform is relevant to whether someone who uses that platform is a subscriber.  If that were the rule, someone that accesses a website that was expensive to create would be a subscriber, but someone that accesses a website that was not expensive to create would not. That is nonsensical and unsupported by case law. Equally irrelevant are articles noting that people prefer to view Internet content on apps as opposed to on mobile websites. *Id.* at 5-6.  If anything, this only underscores that an app is "merely . . . a more convenient form of visiting [a] website" and that "[i]n common parlance, an individual who watches video on the App is simply known as a 'user.'" *Yershov v. Gannett Satellite Info. Network, Inc.*, CIV.A. 14-13112-FDS, 2015 WL 2340752, at *9 (D. Mass. May 15, 2015).  *See also* A*ustin–Spearman v. AMC Network Entm't LLC*, 98 F.Supp.3d 662, 669 (S.D.N.Y. Apr. 7, 2015) ("[C]asual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of 'subscription.'").  Put simply, the fact that people like using apps so companies build

9

apps does not create a "subscriber" relationship.

Even further afield is Plaintiff's allegation that CNN's job posting for a "senior mobile editor" somehow renders Plaintiff a subscriber.  Pl.'s Suppl. Mem. of Law at 6.  News companies use editors. The posting Plaintiff points to seeks someone to work "across CNN editorial to plan and publish timely, accurate and best-in-class news and information optimized for phones, pads and other mobile devices."  *Senior Mobile Editor – CNN Digital*, Time Warner, https://careers.timewarner.com/tgwebhost/jobdetails.aspx?partnerid=391&siteid=3 6&jobid=738125 (last accessed Dec. 7, 2015). Plaintiff's attempt to convert a job listing for an editorial position at a news network into proof of the existence of a subscriber relationship because the news will be distributed on mobile devices is nonsensical.

Plaintiff also cites to a number of articles in which CNN or its parent company expresses enthusiasm about acquiring mobile viewers. *See* Pl.'s Suppl. Mem. of Law at 6-7. These articles hardly warrant discussion. That CNN hopes to acquire a greater number of mobile viewers should come as no surprise and creates no more of a subscriber relationship than a website operator hoping (and trying) to get an increased number of website visitors.  A desire to acquire additional mobile viewers or users is not part of the rubric set forth by the Eleventh Circuit and has no impact

10

on whether Plaintiff is a subscriber under the VPPA.

>        **ii.     Plaintiff's Argument That Downloading an App is the Equivalent of Registering Has Already Been Rejected**

Downloading an app is not the equivalent of registration.  Plaintiff admits that "the CNN app does not require formal registration," but argues that downloading the app is the equivalent, and seeks to amend his complaint for a second time to add this assertion.  *See* Pl.'s Suppl. Mem. of Law at 7-8.  But the Eleventh Circuit specifically rejected this notion when it held that the "downloading of a mobile app on an Android device to watch free content, without more, does not a 'subscriber' make." *Ellis*, 803 F.3d at 1257.  The Eleventh Circuit emphasized the importance of registration in the assessment of whether someone is a subscriber, and essentially rejected the notion that downloading an app, alone, equates to registration.  Of course, downloading an app and registering are not the same.  Registering usually requires providing personal information to the other party, who then possesses and may use that information: a more durable and mutual relationship.

Studies of app downloads and usage confirm this common sense notion.  A 2014 study found that in a sample of 12,971 Android smartphone users, 38% installed, and then uninstalled the same app within one day of installation. *See One-quarter of just-installed apps are wiped in 10 minutes*, Kantar, http://us.kantar.com/tech/mobile/2015/kantar-data-on-android-app-survival-rates/.

11

A 2011 study found 26% of users downloaded an app and used it only once. *Mobile App Users Are Both Fickle And Loyal: Study*, TechCrunch, http://techcrunch.com/2011/03/15/mobile-app-users-are-both-fickle-and-loyal-study. Such studies illustrate that downloading an app does not create a persistent and ongoing relationship between the user and the app provider.

The Eleventh Circuit was clear that "downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app." *Ellis*, 803 F.3d at 1257. Even with the new allegations he seeks to make, Plaintiff still merely downloaded the App for free and used it to view free content without any commitment. This is not enough to make him a subscriber under binding circuit precedent.

### iii. Inclusion of CNN in Plaintiff's Cable TV Package Does not Make Plaintiff a Subscriber of the CNN App

Equally irrelevant are Plaintiff's new allegations that "he subscribed to CNN through his cable provider." Pl.'s Suppl. Mem. of Law at 9. Such allegations would not demonstrate a subscriber relationship with regard to the App for two reasons. *First*, the allegations are based on a flawed premise: Plaintiff does not subscribe to the CNN network; he subscribes to a cable television provider that includes CNN in its offering. *Second*, even if he did subscribe to the CNN network, that would not

12

make him a subscriber with respect to the App.

When a cable subscriber chooses and pays for a cable TV package, he is granted access by the cable provider to a changing list of dozens, if not hundreds of networks. The cable provider *independently* makes financial arrangements with television networks to offer their program services. The cable subscriber does not transact with individual networks, or form a "subscriber" relationship with them. He "watches" them.

This is illustrated in several ways. In certain instances, cable companies can add or remove networks from their bundles. Comcast, the largest cable provider in America, for instance, states that "[s]ervice, channels, and pricing are subject to change."[3] A cable subscriber has no recourse with the network itself regarding such changes. The lack of subscriber relationship between a cable subscriber and an individual network is also illustrated by the fact that when cable providers and networks are in disputes, if the cable provider stops telecasting the networks' program services, the viewers would not have any recourse against the network.

Plaintiff would have paid, registered with, committed to, and received delivery from his cable provider. He would not have paid, registered with,

---

[3] XFINITY TV Channels, http://www.xfinity.com/Corporate/Learn/DigitalCable/TVChannel LineUp.html.

committed to, or received delivery from the CNN network.  As such, while his new allegations might show that he was a subscriber of his cable provider, they would not show that he was a subscriber of CNN.  *See Ellis*, 803 F.3d at 1256 (quoting *Yershov*, 2015 WL 2340752, at *9) (noting that "subscriber" relationship features "payment, registration, commitment, delivery, [expressed association,] and/or access to restricted content").

To get around this, Plaintiff cites to materials in which CNN purportedly calls subscribers of cable providers with bundles offering CNN, subscribers of CNN.  Pl.'s Suppl. Mem. of Law at 10.  As an initial matter, even if CNN referred to viewers of its network as "subscribers" at some point, that would not make them subscribers under the VPPA.  But putting that aside, Plaintiff distorts the materials he cites.  For instance, the Time Warner 10-K Plaintiff cites states, "Turner's programming is distributed by cable system operators, satellite service distributors, telephone companies and other distributors (known as affiliates) and is available to ***subscribers of the affiliates*** for viewing…"  Time Warner Inc., Annual Report (Form 10-K) 48–49 (Feb. 26, 2015), http://www.sec.gov/Archives/edgar/data/1105705/000119312515064862/d862821d10k.htm.  Time Warner thus does not refer "to its television viewers as subscribers," as Plaintiff claims; it refers to ***subscribers of affiliates (which include cable providers)*** as subscribers.  *See* Pl.'s

14

Suppl. Mem. of Law at 10.  Plaintiff claims that because the same report discusses "a service that 'allows subscribers to watch CNN's news and original programming live and on demand,'" CNN regards viewers of its program services as subscribers. *Id*.  Plaintiff omits the remainder of the passage revealing that the passage is not discussing CNN program services viewed on television.

### iv.   Even if Plaintiff Subscribes to the CNN Network, That Does Not Make Him a "Subscriber" With Respect to the App

Even if Plaintiff is considered a subscriber of CNN network, it has no bearing here. Plaintiff conflates subscription to a company's television services with subscription to that same company's distinct mobile app.  But subscribing to a company's service distinct from its provision of video tape services does not make someone a "subscriber" under the VPPA.  *See In re Nickelodeon Consumer Priv. Litig.*, CIV.A. 12-07829, 2014 WL 3012873, at *8 (D.N.J. July 2, 2014) ("[T]he VPPA only contemplates civil actions against those VTSP from whom 'specific video materials or services' have been requested.")  This is made clear by the VPPA's legislative history: "The definition of personally identifiable information includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services *does not mean that all of its products or services are within the scope of the bill*."  S.Rep. No. 100–599, at 12 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342–1 (emphasis added).

15

Live television is outside the scope of the VPPA.[4]   Thus, even if someone is a "subscriber" of a company's television program services, it would not bring them under the VPPA's ambit for the same company's video tape services.   Finding otherwise would lead to absurd results.   For example, Google is a "video tape service provider" under the VPPA with respect to its YouTube product.   Google also offers a cloud storage service (leasing storage space for a fee) unrelated to videos. Subscribing to Google's cloud storage service does not make someone a "subscriber" under the VPPA if he later visits YouTube and watches a video without signing in, registering, or paying.   Similarly, a person that subscribes to the New York Times in print is not a "subscriber" under the VPPA if he watches a video on the New York Times website.   Companies can offer multiple products and services, but only be a video tape service provider for one of them.   Here, Plaintiff would not be a "subscriber" with respect to the App even if he "subscribes" to a portion of CNN's services distinct from its provision of videos on the App.   The allegations Plaintiff seeks to add regarding CNN's television program services are thus irrelevant.

---

[4] Live television is covered by the Cable Act (47 U.S.C. § 551) when offered by cable operators, and SHVERA (47 U.S.C. § 338) when offered by satellite providers.

## II.     The Eleventh Circuit's *Ellis* Decision Does Not Require Amendment

The *Ellis* decision does not "require" Plaintiff be allowed to amend his complaint.  *See* Pl.'s Suppl. Mem. of Law at 2.  Plaintiff argues that because "the Eleventh Circuit articulated a new standard" he "must be allowed an opportunity to amend his complaint if an intervening appellate decision changes controlling precedent." *Id*.  This argument misses the mark for several reasons.

First, the rule Plaintiff suggests does not exist.  This is confirmed by the fact that in *Ellis*, the Eleventh Circuit did not allow the plaintiff to amend his complaint. There, the district court dismissed the plaintiff's amended complaint with prejudice because "[a]ny additional amendments would be futile."  2014 WL 5023535 at *4. The Eleventh Circuit affirmed the district court's dismissal with prejudice, just on an alternative ground.  If, as Plaintiff suggests, amendment "must be allowed" where an intervening appellate decision changes controlling precedent, the Eleventh Circuit would have granted plaintiff leave to amend his complaint or remanded the case to the district court to do so.  The Eleventh Circuit did neither.

None of the cases Plaintiff cites require that he be allowed to amend his complaint where doing so would be futile.  *Bryant* was a securities class action in which the district court certified its order denying a motion to dismiss for interlocutory review, acknowledging a "distinct difference of opinion among the

17

district courts" regarding pleading requirements. *Bryant v. Apple S., Inc.*, 25 F. Supp. 2d 1372, 1383 (M.D. Ga. 1998). The Eleventh Circuit vacated the district court's opinion and remanded in light of its decision regarding the pleading requirement. *Bryant v. Dupree*, 252 F.3d 1161, 1165 (11th Cir. 2001). On remand, the defendants renewed their motion to dismiss, and plaintiffs filed a response which included a request for leave to amend. *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368 (M.D. Ga. 2000). The district court dismissed with prejudice, and the plaintiffs appealed. *See Id*. The Eleventh Circuit held that dismissal without leave to amend was improper. *Bryant*, 252 F.3d at 1165.

In short, the Eleventh Circuit was asked to settle a difference of opinion regarding pleading requirements among the district courts; it did so and remanded, but the district court did not allow amendment to the complaint, despite having asked the Eleventh Circuit to determine the relevant pleading requirements. If any rule can be drawn from the case, it is that when a district court asks a circuit court to settle a dispute among district courts on interlocutory appeal regarding pleading requirements, that district court may not then refuse to allow the plaintiff to amend when the circuit court does so. *Bryant* is also distinguishable in that the Eleventh Circuit required the district court to allow amendment as a result of the Eleventh Circuit's decision *in the very same case*, not a different case.

18

Plaintiff's other cases also do not impart the rule Plaintiff suggests.  In *Brisson v. Ford Motor Co.*, 349 F. App'x 433 (11th Cir. 2009), consumers filed a class action and the district court granted a motion to dismiss and, simultaneously *sua sponte disallowed the consumers leave to file a second amended complaint. Moon v. Cincinnati Ins. Co.*, 975 F. Supp. 2d 1326 (N.D. Ga. 2013) and *Jeffries v. United States*, No. No. 1:07-CR-311-RWS-LTW, 2013 WL 498810 (N.D. Ga. Feb. 11, 2013) involved motions for reconsideration, a different request than for leave to amend with a different standard.  *See* Fed.R.Civ.P. 59(e); Fed.R.Civ.P. 60(b).

Finally, even if there were such a rule that an appeals court decision in one case required allowing plaintiff in a different case to be allowed to amend his complaint, it would not apply here.  That is because *Ellis* did not change controlling precedent.  It interpreted the meaning of the VPPA's text as appeals courts often do. *See, e.g.*, *In re Intelligroup Sec. Litig.,* 527 F. Supp. 2d 262, 381 (D.N.J. 2007) (denying leave to amend, and holding that "an entry of a binding precedent, which: (a) is issued while the matter is still pending, and (b) clarifies—rather than alters the existing legal regime—cannot qualify as an intervening change in the law"); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1015 (11th Cir. 2005) (affirming district court denial of leave to amend where appeals court decision "did not articulate a new

standard that required an extensive amendment to [plaintiff's] complaint" but rather "interpreted an existing standard that [plaintiff] had failed to meet").

## CONCLUSION

There is no rule that requires this Court to allow Plaintiff to amend his complaint. To the contrary, denying leave to amend as futile is appropriate when the allegations of the proffered complaint would be unable to withstand a motion to dismiss. *Amick v. BM & KM, Inc.,* 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003). That is the case here. The Court should dismiss Plaintiff's Amended Complaint with prejudice and not allow Plaintiff to file a second amended complaint.

Dated:  December 14, 2015                Respectfully submitted,


/s/ Jeffrey Landis
Marc Zwillinger
marc@zwillgen.com
Jeffrey Landis
jeff@zwillgen.com
ZWILLGEN PLLC
1900 M. Street NW, Suite 250
Washington, DC 20036
(202) 706-5205 (telephone)
(202) 706-5298 (facsimile)

James A. Lamberth
Georgia Bar No. 431851
james.lamberth@troutmansanders.com
Alan W. Bakowski
Georgia Bar No. 373002
alan.bakowski@troutmansanders.com

20

TROUTMAN SANDERS LLP
600 Peach Tree Street, N.E., Suite 5200
Atlanta, Georgia 30308
(404) 885-3000 (telephone)
(404) 962-3900 (facsimile)

*Counsel for Defendants*

21